IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

BRANDON XAVIER HEARD,              )
                                  )
          Plaintiff,              )
                                  )
     v.                           )          CV 324-006
                                  )
WARDEN CHAMBERS; DEPUTY           )
WARDEN PROSSER; ADA WARDEN        )
MESSER; DEPUTY WARDEN             )
FRANKLIN; LT. GREEN; LT. LINDA;   )
R.N. OLIVER; DR. AYODELE AYEDUN;  )
and WELL PATH HEALTHCARE          )
PROVIDER,                         )
                                  )
          Defendants.             )

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Plaintiff, incarcerated at Wheeler Correctional Facility in Alamo, Georgia, has submitted to the Court for filing a complaint brought pursuant to 42 U.S.C. § 1983 concerning events alleged to have occurred at Johnson State Prison ("JSP") in Wrightsville, Georgia. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I.    **SCREENING THE COMPLAINT**

      A.    **BACKGROUND**

Plaintiff brings this action against the following defendants at JSP: (1) Warden Chambers, (2) Deputy Warden Prosser, (3) ADA Warden Messer, (4) Deputy Warden

Franklin, (5) Lieutenant Green, (6) Lieutenant Linda, (7) Registered Nurse Oliver, (8) Dr. Ayodele Ayedun, and (9) Well Path Healthcare Provider.  (Doc. no. 1, pp. 2-5.)  Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On the morning of January 31, 2023, Plaintiff was asleep in his assigned cell in the H-2 dorm at JSP.  (Id. at 10, 18.)  Sometime between 6:00 and 7:30 AM, an inmate knocked on the door of Plaintiff's cell and informed Plaintiff there was a dorm meeting.  (Id. at 10.)  When Plaintiff opened his cell door, he saw approximately twenty to twenty-five inmates gathered in the T.V. room.  (Id.)  Plaintiff entered the T.V. room to determine why the inmates were gathering and learned "there w[ere] no issues."  (Id. at 11.)  Plaintiff then returned to his cell to wash his face and brush his teeth.  (Id.)

Upon returning to his cell, Plaintiff noticed several of his items went missing while he was in the T.V. room, so Plaintiff returned to the T.V. room to "inquire about those missing items."  (Id.)  As he did so, ten to fifteen inmates approached Plaintiff and "attack[ed] [him] with shanks and knives as well as locks tied to various clothing."  (Id.)  Fearing for his life, Plaintiff attempted to escape the attack by running out of the dorm for help.  (Id.)  The inmates chased Plaintiff outside, tripped him, and resumed the attack on the sidewalk.  (Id.)  The inmates beat, kicked, and repeatedly stabbed Plaintiff as he yelled for help.  (Id.)

Defendant Lieutenant Linda witnessed the attack from a few feet away but did not report the attack, request assistance from other JSP officials to disrupt the attack, or offer Plaintiff medical attention.  (Id. at 11-12.)  Instead, Defendant Linda instructed Plaintiff and the inmates to return to the dorm where the attack had started.  (Id.)  After Plaintiff and the inmates returned to the dorm, Defendant Linda informed Defendant Lieutenant Green about

the attack.  (Id.)  After learning about the attack, Defendant Green entered the dorm but did not perform a wellness check on Plaintiff.  (Id.)

As a result of the attack, Plaintiff suffered serious injuries, including a broken right foot, multiple stab wounds, and a punctured lung.  (Id. at 12, 18.)  Because Plaintiff did not receive immediate medical treatment for his punctured lung, Plaintiff fainted approximately an hour and a half after the attack.  (Id. at 12.)  After Plaintiff fainted, a group of inmates took Plaintiff to the JSP medical ward in a wheelchair while he "slipp[ed] in and out of consciousness."  (Id. at 13.)  JSP medical staff determined that Plaintiff's injuries required outside medical attention and transported him to the hospital.  (Id.)  Plaintiff was released from the hospital after receiving four days of inpatient treatment.  (Id.)

Following the attack, unspecified JSP officials informed Defendant Warden Chambers about the incident.  (Id.)  Plaintiff's fiancée also made several calls to inform Defendant Chambers of the incident.  (Id.)  Defendant Chambers attempted to minimize the severity of the attack when speaking to Plaintiff's mother, as well as when creating written documentation about the attack, by indicating Plaintiff was only sent to the hospital for the injuries to his foot.  (Id.)  However, Plaintiff also received staples to treat several stab wounds and a chest tube to treat his punctured and collapsed lung while at the hospital.  (Id. at 18.)  Moreover, Defendant Chambers, as well as Defendants Deputy Warden Prosser, ADA Warden Messer, and Deputy Warden Franklin, failed to investigate the attack, despite the availability of surveillance footage documenting the attack.  (Id. at 13-14.)

After returning to JSP from the hospital, Defendants Nurse Oliver and Dr. Ayedun, employees of Defendant Well Path, provided follow-up treatment for Plaintiff's injuries.  (Id. at 15.)  On an unspecified date, Defendant Oliver mixed up Plaintiff's x-rays with those of an

amputee and "admitted" to Plaintiff the mistake was grossly negligent, as ample medical documentation reflects Plaintiff is not an amputee. (Id.)  Moreover, Defendant Oliver "was well aware of the immediate medical attention needed" for Plaintiff's broken foot, but Defendants Oliver and Ayedun left Plaintiff's foot untreated "for more than 3 weeks after the radiology report confirmed 3 breaks and fractures to [Plaintiff's] right Metatarsal Bone." (Id. at 15, 18.)  Although Plaintiff's medical records reflect an estimated eight to twelve weeks of recovery time for Plaintiff's broken foot, Defendant Ayedun ordered Plaintiff's wheelchair be taken away before allowing this time to elapse. (See id. at 15-16.)  As a result of Defendants Oliver and Ayedun's inadequate treatment, Plaintiff's foot healed abnormally and he requires a cane to walk. (Id. at 16, 18.)  As Defendants Oliver and Ayedun's employer, Defendant Well Path is also responsible for the medical providers' failures. (Id. at 16.)

Plaintiff seeks monetary damages, a declaratory judgment, and injunctive relief. (Id. at 18-23.)

## B.    DISCUSSION

### 1.    Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (per curiam) (citing Mitchell v. Farcass, 112

F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2.    Plaintiff Fails to State a Claim of Deliberate Indifference to His Safety Against Any Defendant

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted).  Accordingly, a prison inmate has a constitutional right to be protected from violence and from physical assault by other inmates.  Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (per curiam).  However, because "a risk of harm to some degree always exists by the nature of its being a [prison]," not every condition rises to the level of an Eighth Amendment violation.  Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga., 400 F.3d 1313, 1323 (11th Cir. 2005); see also Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981) ("This does not mean that the constitutional rights of inmates are violated every time a prisoner is injured.  It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials."); Terry v. Bailey, 376 F. App'x 894, 895 (11th Cir. 2010) (per curiam) ("Although 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners,' not every instance of inmate on inmate violence 'translates into constitutional liability for prison officials responsible for the victim's safety.'" (citing Farmer, 511 U.S. at 833-34)).  "[A]n excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable."  Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014).

### a.    Plaintiff Fails to State a Valid Failure to Protect Claim Against Any Defendant

"Merely negligent failure to protect an inmate from attack does not justify liability

under § 1983." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*) (citation omitted). Stated otherwise, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Farmer, 511 U.S. at 835-39; see also Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (requiring a plaintiff to show "more than mere negligence," and stating that courts are to look for "obduracy and wantonness, not inadvertence or error in good faith.").

The three elements of a failure-to-protect claim, which are evaluated in part by an objective standard and in part by a subjective standard, include: (1) incarceration under conditions posing a substantial risk of serious harm; (2) the defendants had a sufficiently culpable state of mind; and (3) causation, e.g., demonstrating the constitutional violation caused an injury. Cox v. Nobles, 15 F.4th 1350, 1357-58 (11th Cir. 2021); see also Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019) (*per curiam*) (explaining objective and subjective analysis of three elements of § 1983 deliberate indifference claim). The second element, deliberate indifference, occurs when a prison official "knows of and disregards an excessive risk to inmate health or safety." Cox, 15 F.4th at 1358 (citation omitted). Thus, Plaintiff must allege a Defendant "was aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that a Defendant "dr[ew] the inference." Id. (citation omitted).

Plaintiff has not alleged any Defendant consciously disregarded a serious and imminent risk to Plaintiff. First, applying an objective standard to the first prong of Plaintiff's deliberate indifference claim, Plaintiff has not alleged he was exposed to "conditions that were extreme and posed an unreasonable risk of serious injury to his future

health or safety." <u>Marbury</u>, 936 F.3d at 1233.   Plaintiff may satisfy this requirement regarding a substantial risk of serious harm either by alleging "individualized risk based on specific threats" or "environmental risk based on dangerous prison conditions." <u>See</u> <u>Bugge</u> <u>v. Roberts</u>, 430 F. App'x 753, 758-59 (11th Cir. 2011) (*per curiam*).   An inmate plaintiff may satisfy the latter by alleging he is confined "in a prison where violence and terror reign." <u>Harrison</u>, 746 F.3d at 1299.   Here, Plaintiff's attempts to show individualized risk and environmental risk both fail.

Plaintiff fails to demonstrate "individualized risk based on specific threats" concerning the January 30, 2023, attack. <u>Bugge</u>, 430 F. App'x at 758-59.   He describes the attack on him on January 31, 2023, but provides no facts to suggest a specific threat or risk of harm to Plaintiff existed prior to the incident.   Indeed, Plaintiff's description of events shows the attack was unprovoked and without warning, as Plaintiff was simply inquiring about the status of his missing items, and the attack by unknown inmates occurred without warning. (Doc. no. 1, p. 11.)   Plaintiff does not allege a specific threat of violence made against him that the Defendants ignored.   Accordingly, he cannot demonstrate any Defendant was deliberately indifferent to Plaintiff's safety.

Plaintiff also fails to demonstrate "environmental risk based on dangerous prison conditions," <u>Bugge</u>, 430 F. App'x at 758-59, because he does not show JSP is "a prison where violence and terror reign," <u>Harrison</u>, 746 F.3d at 1299.   "To establish deliberate indifference based on a generalized risk, the plaintiff must show 'that serious inmate-on-inmate violence was the norm or something close to it.'" <u>Id.</u>   (quoting <u>Purcell</u>, 400 F.3d at 1322).   Further, "evidence of inmate-on-inmate assault involving weapons does not indicate that inmates were 'exposed to something even approaching the constant threat of violence.'"

Harrison, 746 F.3d at 1299-1300 (quoting Purcell, 400 F.3d at 1321)).  Here, Plaintiff offers only a blanket assertion that Defendants knew of violent conditions at JSP and failed to implement measures to prevent inmate-on-inmate violence.  (Doc. no. 1, pp. 6-7, 14-15.) Plaintiff offers no facts to support his allegation of ongoing violence at JSP beyond his allegations related to the isolated attack on January 30, 2023.  (See id.)  Neither vague concerns about safety in the prison setting, nor an unpredictable attack with no prior threat are sufficient to establish a substantial risk of serious harm to Plaintiff.  See Marbury, 936 F.3d at 1237; Est. of Owens v. GEO Grp., Inc., 660 F. App'x 763, 772 (11th Cir. 2016) (*per curiam*).

Second, Plaintiff has not alleged any Defendant actually (subjectively) knew Plaintiff faced a substantial risk of serious harm, let alone that they disregarded any such known risk. Plaintiff does not allege he notified any Defendant of a potential threat prior to the attack.[1] Nor has Plaintiff alleged any Defendant knew that allowing inmates to congregate in the T.V. room created an opportunity for an assault to occur.  To the extent Plaintiff's allegations could be read to suggest a congregation of inmates gathering in the T.V. room, including inmates from another dorm, could be problematic, general knowledge of a violent history is not sufficient.  See Marbury, 936 F.3d at 1237-38; Carter v. Galloway, 352 F.3d 1346, 1349-50 (11th Cir. 2003) (*per curiam*) (requiring "much more than mere awareness" of an inmate's "generally problematic nature" to impose liability for failing to protect against attack).  Plaintiff's allegation Defendant Linda "failed to protect [Plaintiff] from further

---

[1] Indeed, Plaintiff states several of the inmates involved in the attack were not assigned to his dorm and does not provide any names of his assailants.  (Doc. no. 1, p. 11.)  He gives no indication of any prior interactions with his assailants, let alone interactions suggesting a particular threat of substantial harm about which he informed any Defendant.

attack by" instructing Plaintiff and his assailants to return to the dorm after the attack fails for the same reason.  Although Plaintiff disagrees with Defendant Linda's course of action and implies Defendant Linda should have been aware of a risk of additional harm by sending the inmates back to the location the attack began, he alleges no facts to suggest Defendant Linda actually knew of any specific risk to Plaintiff, let alone that she ignored that risk. Accordingly, Plaintiff's allegations fail to establish Defendants subjectively knew of and disregarded a substantial risk of serious harm to Plaintiff.

Third, Plaintiff cannot hold Defendants Chambers, Prosser, Messer, or Franklin liable by virtue of their supervisory positions.  "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."  Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) (*per curiam*).  Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*.  See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted).  Therefore, to hold any of the supervisory Defendants liable, Plaintiff must demonstrate that they (1) actually participated in the alleged constitutional violation, or (2) there is a causal connection between the individual's actions and the alleged

constitutional violation.  See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).  Here, Plaintiff appears to name Defendants Prosser, Messer, and Franklin as Defendants not because of their direct involvement in the events about which he complains, but by virtue of their supervisory positions.  Nowhere does Plaintiff allege these three were present for, or participated in, the substantive events on January 31st about which Plaintiff complains.  As for Defendant Chambers, Plaintiff merely asserts he was made aware of the January 31st attack after the fact and did not adequately investigate the attack or obtain medical care for Plaintiff.  As to all four supervisory Defendants, Plaintiff complains they did not respond appropriately to the January 31st attack, nor did they sufficiently address the problem of ongoing violence at JSP.  (Doc. no. 1, pp. 13-15.)

Therefore, Plaintiff must allege a causal connection between these Defendants and the asserted constitutional violation.  See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation).  The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high.  In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).  A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the

subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff fails to allege facts sufficient to support the necessary causal connection.  First, as discussed above, there is no actionable, underlying constitutional violation regarding Plaintiff's assault and thus no basis for *respondeat superior* liability on such claim.  See Dang v. Sheriff, Seminole Cnty., Fla., 871 F.3d 1272, 1283 (11th Cir. 2017).  Second, nothing in the complaint indicates Defendants were responsible for a policy or custom resulting in a violation of Plaintiff's rights.  At best, Plaintiff states Defendants Chambers, Prosser, Messer, and Franklin were responsible for the security, care, and treatment of inmates at JSP by virtue of their job titles.  (Doc. no. 1, pp. 13-15.)  Any implicit suggestion that these Defendants allowed or otherwise tacitly authorized the conduct of subordinates via customs and practices of allowing inmates to assault each other is insufficient because Plaintiff offers no facts to support this conclusory assertion.  See Anderson v. Hall, No. 5:19-CV-6, 2020 WL 2896682, at *2 (S.D. Ga. May 29, 2020) (dismissing claim for liability of supervisory prison officials where no facts alleged in support of causal connection allegations), *adopted by*, 2020 WL 3406329 (S.D. Ga. June 19, 2020).  Nor does Plaintiff allege any facts to show these supervisory Defendants either directed subordinates to act unlawfully or knew they would do so and failed to act in an appropriate manner.

In sum, Plaintiff has not alleged a viable failure to protect claim against any Defendant.

### b.    Plaintiff Fails to State a Valid Failure to Intervene Claim Against Any Defendant

In addition to Plaintiff's allegations Defendants failed to protect him from harm by preventing the attack, he also alleges Defendants failed to intervene to disrupt the attack as it occurred.  A prison official can be liable under the Eighth Amendment for failing to take

reasonable steps to protect a victim from an ongoing assault by another inmate.  See Ledlow v. Givens, 500 F. App'x 910, 914 (11th Cir. 2012) (per curiam) (citing Skritch v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002)).  As explained by the Eleventh Circuit, liability for a failure to intervene claim may be imposed when:  (1) another inmate's physical assault created a substantial, objective risk of injury, (2) of which a defendant is subjectively aware, (3) the defendant was in a position to intervene, and (4) the defendant did not respond reasonably to the risk of injury.  See Johnson v. Boyd, 568 F. App'x 719, 724-25 (11th Cir. 2014) (per curiam).  Plaintiff bears the burden of showing Defendants were in a position to intervene but did not do so.  See Ledlow, 500 F. App'x at 914.

The reasonable response requirement has been described as follows:

"[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Farmer, 511 U.S. at 844. More succinctly, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause."  Id. at 845.  We have said that a prison official violates the Eighth Amendment if he responds to a known risk "in an objectively unreasonable manner."  Cottone [v. Jenne], 326 F.3d 1352, 1358 (11th Cir. 2003).  An official responds to a known risk in an objectively unreasonable manner if "he knew of ways to reduce the harm but knowingly declined to act" or if "he knew of ways to reduce the harm but recklessly declined to act."  Hale [v. Tallapoosa Cty.,] 50 F.3d 1579, 1583 (11th Cir. 1995).

Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 619-20 (11th Cir. 2007).

As noted, for liability to attach, prison officials must have been "in a position to intervene."  Terry, 376 F. App'x at 896 (citing Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998)).  An officer who fails to intervene in a fight between inmates can only be held liable if he "was physically able and had a realistic chance to intervene and act in time to protect the inmate plaintiff."  Smith v. Andrews, CV 114-206, 2016 WL 6818755, at *4

(S.D. Ga. Nov. 16, 2016) (collecting cases), *adopted by*, 2016 WL 7197446 (S.D. Ga. Dec. 9, 2016) (Hall, C.J.); Seals v. Marcus, No. 1:11-CV-99 WLS, 2013 WL 656873, at *7 (M.D. Ga. Jan. 25, 2013) (same), *adopted by*, 2013 WL 663579 (M.D. Ga. Feb. 22, 2013).

Here, Plaintiff offers no facts to support a claim that Defendants were physically able to intervene, had a realistic chance to intervene, and could do so without unreasonably risking their own health and safety.  Plaintiff does not identify who attacked him, though he notes that it was a group of ten to fifteen inmates armed with shanks, knives, and "locks tied to various clothing." (Doc. no. 1, p. 11.)  Plaintiff asserts after the attack moved outside, Defendant Linda was only a few feet away.  (Id. at 12.)  Plaintiff does not allege Defendant Linda was armed or in what manner Defendant Linda or any other Defendant could have reasonably intervened without an unreasonable risk to their own health and safety.  "[N]o rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence."  Seals, 2013 WL 656873, at *8 (quoting Longoria v. Texas, 473 F.3d 586, 594 (5th Cir. 2006)); see also Winfield v. Bass, 106 F.3d 525, 532 (4th Cir. 1997) ("[A]ll of the authority of which we are aware leads to the conclusion that such heroic measures are not constitutionally required.").  Thus, Plaintiff fails to state a valid failure to intervene claim.

### 3.    Plaintiff Fails to State a Valid Deliberate Medical Indifference Claim

To state a claim for deliberate indifference to a serious medical need, Plaintiff must allege that:  (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct.  Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (explaining that in addition to objective and subjective components of Eighth Amendment claim, a plaintiff must

"show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim).

To satisfy the objective component regarding a serious medical need, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).  To satisfy the subjective component that a defendant was deliberately indifferent to his serious medical need, Plaintiff must allege that person:  (1) was subjectively aware of a serious risk of harm and (2) disregarded that risk (3) by following a course of action which constituted "more than [gross] negligence."[2] Id. at 1326-27.  "A prisoner must show the defendant prison officials acted with a sufficiently culpable state of mind." Chandler v. Crosby, 379 F.3d 1278, 1290 (11th Cir. 2004) (citations omitted).  Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference.  Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (per curiam) (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim).

In addition, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243

---

[2] The Court is aware that there is disagreement within Eleventh Circuit precedent as to whether the appropriate standard is more than "mere negligence" or more than "gross negligence." Cf. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) (mere negligence) with Goebert, 510 F.3d at 1327 (gross negligence).  A recent Eleventh Circuit decision attempting to resolve the conflict in favor of the gross negligence standard has been vacated and will be reheard en banc.  See Wade v. McDade, 67 F.4th 1363, 1374 (11th Cir. 2023), vacated and reh'g en banc granted by Wade v. Ga. Corr. Health, LLC, 83 F.4th 1332 (11th Cir. 2023).  The conflict need not delay the Court, however, because as explained herein, Plaintiff fails to state a claim under either standard.

(11th Cir. 2003).  The Eighth Amendment does not mandate that the medical care provided to the prisoner be "perfect, the best obtainable, or even very good."  <u>Harris</u>, 941 F.2d at 1510 (quoting <u>Brown v. Beck</u>, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)).  Furthermore, the Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment does not support a claim of deliberate indifference.  <u>See</u> <u>Smith v. Fla. Dep't of Corr.</u>, 375 F. App'x 905, 910 (11th Cir. 2010) (*per curiam*); <u>see also</u> <u>Hamm v. DeKalb Cnty.</u>, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments.").

Plaintiff alleges three separate medical deliberate indifference claims against various Defendants.  The first medical deliberate indifference claim is against Defendants Linda and Green for their failure to obtain timely medical assistance for Plaintiff following the attack. (Doc. no. 1, pp. 11-12.)  The second claim is brought against Defendants Oliver and Ayedun for failure to provide adequate medical treatment.  (<u>Id.</u> at 1-16.)  The third claim is brought against Well Path, and alleges it failed to ensure its medical providers were competent, certified, and properly trained.  (<u>Id.</u> at 16.)  Each of the three allegations fail to state a medical deliberate indifference claim upon which relief may be granted.

First, Plaintiff fails to state a medical deliberate indifference claim against Defendants Linda and Green.  Although Plaintiff suffered severe injuries as a result of the attack, no facts suggest that Plaintiff's need for immediate medical attention was "so obvious that even a lay person would easily recognize" it.  <u>Goebert</u>, 510 F.3d at 1326.  A punctured lung is not externally apparent, and no facts here suggest that Plaintiff informed Defendants Linda or Green of any respiratory difficulties.  Notably, Plaintiff fainting an hour and a half after the attack was

the first obvious physical manifestation of a serious injury requiring medical attention.  Plaintiff does not allege Defendants Linda or Green refused Plaintiff medical attention after he fainted or otherwise delayed his attempts to seek medical treatment, as Plaintiff was taken immediately to the medical ward by other inmates.   Accordingly, Plaintiff fails to satisfy the subjective component, because no facts suggest that Defendants Linda and Green disregarded a serious risk of harm to Plaintiff's health after the attack.  With no outward indication of a serious health condition and no assertion that Plaintiff informed Defendants Linda or Green that his condition was serious, Defendants Linda and Green could not be subjectively aware of the risk to Plaintiff's health.  Moreover, even if Plaintiff had shown Defendants Linda and Green were subjectively aware of the risk, it is unlikely that the delay in Plaintiff receiving medical treatment cause by their inaction constitutes more than "mere negligence."  Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016) (*per curiam*).

Second, Plaintiff fails to state a medical deliberate indifference claim against Defendants Oliver and Ayedun.  "[N]ot every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  Farrow, 320 F.3d at 1243.  The Eighth Amendment does not mandate that the medical care provided to the prisoner be "perfect, the best obtainable, or even very good."  Harris, 941 F.2d at 1510 (quoting Brown, 481 F. Supp. at 726).  Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference.  Campbell, 169 F.3d at 1363-72; Harris, 941 F.2d at 1505; see also Palazon, 361 F. App'x at 89 (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim).  Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.

Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986).

Here, Plaintiff's allegations assert mere negligence on the part of Defendants Oliver and Ayedun. (Doc. no. 1 at pp. 15-16.) Though Defendant Oliver allegedly mixed up Plaintiff's x-rays with those of an amputee, Plaintiff offers no explanation of how this error negatively impacted his treatment, let alone how it rises to the level of intolerability. Plaintiff also vaguely asserts Defendant Ayedun ordered Plaintiff's wheelchair be taken away too early in his recovery, but does not assert when this occurred to establish whether this treatment decision rises to the level of gross incompetence. (See id.) Plaintiff does not assert that he was immobile or otherwise unable to function without the wheelchair, and Plaintiff alleges no facts to suggest Defendant Ayedun's order was based on anything other than the progress of Plaintiff's treatment. Because medical malpractice is insufficient to give rise to a medical deliberate indifference claim, and Plaintiff allegations constitute nothing beyond alleged medical malpractice, Plaintiff's claims against Defendant Oliver and Defendant Ayedun must fail.

Third, Plaintiff fails to state a medical deliberate indifference claim against Defendant Well Path. A private entity contracting to provide medical services is only liable under § 1983 when employing a custom or policy that results in deliberate indifference to an inmate's serious medical needs. Brown v. Bell, No. 220-CV-281, 2022 WL 779771, at *3 (N.D. Ala. Mar. 14, 2022) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)); see also Denham v. Corizon Health, Inc., 675 F. App'x 935, 940 (11th Cir. 2017) (*per curiam*); Massey v. Montgomery Cnty. Det. Facility, 646 F. App'x 777, 780 (11th Cir. 2016) (*per curiam*). However, the law is well established that a healthcare provider's liability cannot be based on "a theory of respondeat superior or vicarious liability alone." Est. of Hand by & through Hand v. Fla. Dep't of Corr., No. 21-11542, 2023 WL 119426, at *6 (11th Cir. Jan. 6, 2023) (*per curiam*)

(citing Hartley, 193 F.3d at 1269).

Here, Plaintiff points to no custom or policy of Defendant Well Path, much less one that amounted to any deliberate indifference.  Such omission is fatal to Plaintiff's claim because Defendant Well Path may only be held liable for a custom or policy that shows deliberate indifference.  Hand, 2023 WL 119426, at *6.  There must be "a persistent and wide-spread practice" rather than "random acts or isolated incidents" to establish a custom or policy.  Id. Here, Plaintiff provides no details that Defendant Well Path had a custom or policy that was even implicated by the conduct of Defendants Oliver and Ayedun.  Plaintiff makes no allegations to show the necessary causal link between a policy and Plaintiff's constitutional violations.  Instead, Plaintiff alleges isolated errors in Plaintiff's treatment by Defendants Oliver and Ayedun constitute the basis for his claims against Defendant Well Path.  Accordingly, Plaintiff's claim of medical deliberate indifference against Defendant Well Path fails.

In sum, Plaintiff fails to state a medical deliberate indifference claim against Defendants Linda, Green, Oliver, Ayedun, and Wellpath.

### 4.      Plaintiff Fails to State a Valid ADA Claim

Title II of the ADA prohibits public entities from discriminating against individual with disabilities or denying them services because of their disabilities.  See 42 U.S.C. § 12132.  Because only public entities are liable for such Title II violations, any claims against Defendants in their individual capacities fail.  Mazzola v. Davis, 776 F. App'x 607, 610 (11th Cir. 2019) (per curiam) (citations omitted).  A discrimination claim under the ADA against state prison officials sued in their official capacity requires a prisoner to satisfy three components:

> (1) that he is a qualified individual with a disability; and (2) that he was either
> excluded from participation in or denied the benefits of a public entity's
> services, programs, or activities, or was otherwise discriminated against by the
> public entity; and (3) that the exclusion, denial of benefit, or discrimination
> was by reason of the plaintiff's disability.

Id. (citation omitted).

Plaintiff contends JSP officials, particularly Defendant ADA Warden Messer, "failed to adhere to policies and standards set forth by ADA descriptions and standards." (Doc. no. 1, p. 7.) Plaintiff's allegations fail to satisfy any of the three elements to state a claim under the ADA. While Plaintiff states in conclusory fashion that he is an ADA qualified individual, he gives no facts to support this claim. (See doc. no. 1, p. 7.) Nor does he allege any facts to satisfy the second and third elements, as he fails to identify what services, programs, or activities he was excluded from or denied benefits of, or how he was otherwise discriminated against because of his disability. See Siskos v. Sec'y, Dep't of Corr., 817 F. App'x 760, 765 (11th Cir. 2020) (per curiam) ("Even assuming Siskos sufficiently alleged that he is a qualified individual with a disability, he failed to allege facts supporting a finding that FDOC excluded him from participation in prison services, denied him the benefits of prison services, or otherwise discriminated against him based on his mental illness."). Accordingly, Plaintiff fails to state a valid ADA claim against any Defendant.

### 5.   Official Capacity Monetary Damages

Plaintiff sues Defendants in their individual and official capacities. (Doc. no. 1, pp. 2-5.) However, the Eleventh Amendment bars official capacity claims against state prison officials for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims against Defendants for monetary relief fail as a matter of law.

## II.     CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief may be granted and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 4th day of June, 2024, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA